IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | |
|---|---|
| LBLA BEAUTY, LLC,               ) | |
|        ) | |
|     Plaintiff,         ) | |
|        ) | |
|     v.          ) | Civil Action No. 1:23-cv-665 (RDA/LRV) |
|        ) | |
| 11177753 CANADA CORPORATION,    ) | |
|  d/b/a LLBA PROFESSIONAL       ) | |
|        ) | |
|     Defendant.         ) | |

**<u>MEMORANDUM OPINION AND ORDER</u>**

This matter comes before the Court on Defendant 11177753 Canada Corporation d/b/a LLBA Professional's ("Defendant") Motion to Dismiss ("Motion"). Dkt. 8. This Court has dispensed with oral argument as it would not aid in the decisional process. *See* Fed. R. Civ. P. 78(b); Local Civil Rule 7(J). This matter has been fully briefed and is now ripe for disposition. Considering the Motion together with Defendant's Memorandum in Support (Dkt. 9), Plaintiff LBLA Beauty, LLC's ("Plaintiff") Opposition (Dkt. 15), and Defendant's Reply (Dkt. 16), the Court GRANTS-IN-PART and DENIES-IN-PART Defendant's Motion for the reasons that follow.

I. BACKGROUND

A. Factual Background[1]

Plaintiff LBLA Beauty, LLC brings seven counts against Defendant Canada Corporation 11177753, LLBA Professional, including: (1) federal trademark infringement; (2) federal unfair

---

[1] This Court accepts all facts alleged within the Complaint as true, as it must at the motion-to-dismiss stage. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

1

competition; (3) federal trademark dilution; (4) Virginia statutory trademark infringement; (5) common law trademark infringement; (6) common law unfair competition; and (7) violation of the Virginia Consumer Protection Act. Dkt. 1 ¶¶ 50-88.

Plaintiff is a California limited liability company with its principal place of business in Torrance, California. *Id.* ¶ 1. Plaintiff markets and sells eyelash extensions, supplies, and beauty products throughout the United States, including in the Commonwealth of Virginia. *Id.* ¶ 2. Defendant is also an eyelash extension supply brand that specializes in eyelash extension tools and kits. *Id.* ¶¶ 3-5. Defendant markets and provides its goods throughout Canada, Europe, and the United States, including the Commonwealth of Virginia. *Id.* Plaintiff is the purported current owner[2] of U.S. Trademark Registration No. 5591441 (the "'441 Registration") and U.S. Trademark Registration No. 5964570 (the "'570 Registration"), both issued by the United States Patent and Trademark Office ("USPTO"). *Id.* ¶¶ 11-12. USPTO assignment records show that the former corporation, LBLA Beauty, Inc., executed purported *nunc pro tunc* assignments to Plaintiff LBLA Beauty, LLC, for both the '441 Registration and the '570 Registration on May 22, 2023, and recorded the assignments on July 12, 2023.[3] Dkt. 9 at 4-5. The two trademarks, collectively the "LBLA Mark" include: (1) the LBLA mark for cosmetic preparations for eyelashes, false lashes, adhesives for affixing false eyelashes, tweezers and hair-removing

---

[2] Defendant contends that Plaintiff is not the current owner for both the '441 Registration and the '570 Registration because the assignments are invalid and the prior owner entity, LBLA Beauty, Inc., had ceased to legally exist before proper transfer of ownership. Dkt. 9 at 8.

[3] This Court takes judicial notice of the USPTO records as they are matters of public record "generally known within [this Court's] territorial jurisdiction" and "can be accurately and easily determined from sources whose accuracy cannot be reasonably questioned." Fed. R. Evid. 201; *see ZAO Odessky Konjatschnyi Zawod v. SIA Baltmark Inv.*, No. 1:12CV515 JCC/IDD, 2013 WL 5945677, at *3 (E.D. Va. Nov. 6, 2013) ("The Court may also take judicial notice of matters of public record").

tweezers, and eyelash extension services; (2) the L LBLA mark together with the associated black and white logo for false eyelashes, adhesives for affixing false eyelashes, cosmetic preparations for eyelashes, eyelash cleanser foam, liquid make-up remover, and tweezers.  Dkt. 1 ¶¶ 11-12.

Plaintiff's allegations arise from Defendant's use of the name LLBA in its U.S. advertising and marketing of its products and services and Defendant's sale of its eyelash extension products and services to the general public.  *Id.* ¶¶ 17-18, 21.  Plaintiff claims that it has been using the LBLA Mark and brand name since May 2018 after obtaining incontestable federal trademark registrations, and that Defendant knew about Plaintiff's registrations and long-term use of the LBLA Mark prior to operating business under the name LLBA.  *Id.* ¶¶ 21, 38.  Further, Defendant owns and operates the websites https://www.llbaprofessional.com and https://llbaprofessional.us (the "Defendant Websites") where it displays the "LLBA Professional Mark" and name.  *Id.* ¶¶ 22-23.  Plaintiff alleges that the marks used on the Defendant Websites are confusingly similar to the LBLA Mark and that Defendant intentionally and purposefully uses them to emphasize and draw attention to the LLBA Professional name for the consuming public.  *Id.* ¶ 24.  Moreover, Plaintiff claims that Defendant's use of the LLBA Professional Mark causes confusion among both of the parties' customers, which is demonstrated by the multiple customer complaints that Plaintiff has received regarding Defendant's products.  *Id.* ¶ 26.

Plaintiff alleges that it has spent time and funds to establish recognition of the LBLA Mark through web, email, and app notifications while also promoting the LBLA Mark through digital advertising on social media platforms such as Instagram, Pinterest, Google Ads, YouTube, TikTok, and Facebook.  *Id.* ¶ 38.  Furthermore, Plaintiff alleges that it has displayed the LBLA Mark on all of its product packaging and other public materials.  *Id.* ¶¶ 38-39.  Plaintiff also claims to have spent nearly $95,000 in advertising for its items and $980,000 in advertising subcontractor

expenses, including an additional $139,000 in 2023 alone. *Id.* ¶ 40. Plaintiff alleges that due to its marketing efforts, it has been nationally recognized, it has generated over $45 million in sales revenue in five years, and it has been featured on podcasts such as the Joanna Lee Podcast and LashFest Podcast, as well as on trade shows such as LASHCONference, Love Lash Congress Miami, International Beauty Show Las Vegas, BeautyCon LA, LashBash Conference, Good Day LA, and FOXNews Los Angeles. *Id.* ¶¶ 41-42. Plaintiff further alleges that Defendant did not license, obtain any rights, or get Plaintiff's permission to use the LBLA Mark in connection with advertising or promotion of its goods and services. *Id.* ¶ 46. Therefore, according to Plaintiff, it had no control over the quality of Defendant's eyelash extension goods and services. *Id.* ¶ 49.

On October 5, 2021, Plaintiff sent Defendant a letter via email regarding the use of the LLBA Professional Mark and alleging that the use of that was a violation of Plaintiff's trademark rights for the LBLA Mark and that it would likely dilute Plaintiff's brand name. *Id.* ¶ 27. Defendant sent two letters in reply via email addressing Plaintiff's allegations and stating that it believed that there would not be a likelihood of confusion given the brands in the marketplace. *Id.* ¶ 28. Consequently, Plaintiff alleges that Defendant refused to stop its use of the LLBA Professional Mark and filed an application with the USPTO to register it (U.S. Serial No. 97414931). *Id.* ¶ 30. In response, Plaintiff sent another warning letter and filed a Letter of Protest ("LOP") to the USPTO with respect to Defendant's filing based on likelihood of confusion. *Id.* ¶¶ 31-32. On February 8, 2023, the Office of the Deputy Commissioner for Trademark Examination Policy ("TEP Office") issued a Letter of Protest Memorandum ("LOP Memo") which concluded that there existed a likelihood of confusion between Plaintiff's LBLA Mark and Defendant's LLBA Professional Mark. *Id.* ¶ 33. However, on May 16, 2023, the USPTO approved registration of the LLBA Professional Mark and published it for opposition without

further explanation.[4]  Dkt. 9 at 3.  Plaintiff claims that Defendant plans to continue to capitalize on Plaintiff's trademark by using the LLBA Professional Mark and that Defendant has used hidden keywords in their advertisements to target Plaintiff's LBLA Mark.  Dkt. 1 ¶ 34.

## B. Procedural Background

Plaintiff filed the instant Complaint in this District on May 5, 2023.  Dkt. 1.  On August 21, 2023, Defendant timely filed a Motion to Dismiss and Memorandum in Support, seeking to dismiss all counts of Plaintiff's Complaint for failure to state a claim.  Dkt. 8-9.  Plaintiff filed its Opposition to the Motion to Dismiss on September 5, 2023.  Dkt. 15.  On September 11, 2023, Defendant filed its Reply.  Dkt. 16.

## II. STANDARD OF REVIEW

A Rule 12(b)(6) motion tests the sufficiency of a complaint.  *Brockington v. Boykins*, 637 F.3d 503, 506 (4th Cir. 2011).  "[T]he reviewing court must determine whether the complaint alleges sufficient facts 'to raise a right to relief above the speculative level[,]'" and dismissal is appropriate only if the well-pleaded facts in the complaint "state a claim to relief that is plausible on its face."  *Goldfarb v. Mayor & City Council of Baltimore*, 791 F.3d 500, 508 (4th Cir. 2015) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555,570 (2007).  A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556).

At the motion-to-dismiss stage, a plaintiff need only "allege facts sufficient to state all the elements of [its] claim," *Bass v. E.I. DuPont de Nemours & Co.*, 324 F.3d 761, 765 (4th Cir. 2003),

---

[4] This Court takes judicial notice of USPTO records as they are matters of public record. Fed. R. Evid. 201.

and "the district court must 'accept as true all well-pled facts in the complaint and construe them in the light most favorable to [the plaintiff].'" *Dao v. Faustin*, 402 F. Supp. 3d 308, 315 (E.D. Va. 2019) (quoting *United States v. Triple Canopy, Inc.*, 775 F.3d 628, 632 n.1 (4th Cir. 2015)). Still, "[c]onclusory allegations regarding the legal effect of the facts alleged" need not be accepted. *Labram v. Havel*, 43 F.3d 918, 921 (4th Cir. 1995); *see also E. Shore Mkts., Inc. v. J.D. Assoc. Ltd. P'ship*, 213 F.3d 175, 180 (4th Cir. 2000) ("[W]hile we must take the facts in the light most favorable to the plaintiff, we need not accept the legal conclusions drawn from the facts . . . . Similarly, we need not accept as true unwarranted inferences, unreasonable conclusions, or arguments."). And "[g]enerally, courts may not look beyond the four corners of the complaint in evaluating a Rule 12(b)(6) motion." *Linlor v. Polson*, 263 F. Supp. 3d 613, 618 (E.D. Va. 2017) (citing *Goldfarb*, 791 F.3d at 508).

### III. ANALYSIS

The gravamen of Plaintiff's allegations is that Defendant has infringed on Plaintiff's trademark rights by selling its eyelash extensions and products under a mark that is confusingly similar to Plaintiff's mark. Dkt. 1 ¶¶ 17-18, 21. Based on these allegations, Plaintiff is bringing claims for state, federal, and common law trademark infringement, unfair competition, trademark dilution and violations of the Virginia Consumer Protection Act. *Id.* ¶¶ 50-88. In its Motion to Dismiss, Defendant asserts that Plaintiff does not own the marks at issue and therefore cannot state a claim for trademark infringement and unfair competition. Dkt. 9 at 8. Defendant also argues that Plaintiff has failed to plead the requisite level of fame to support a trademark dilution claim under the FTDA. *Id.* at 14; *see also Field of Screams, LLC v. Olney Boys & Girls Cmty. Sports Ass'n*, No. CIV.A. DKC 10-0327, 2011 WL 890501, at *9 (D. Md. Mar. 14, 2011) (noting that to state a dilution claim "under the federal statute a plaintiff must establish that its mark is nationally

6

famous and known to the 'general consuming public of the United States.'"). Finally, Defendant argues that Plaintiff's claims for violation of the Virginia Consumer Protection Act should be dismissed because there is no consumer transaction at issue in this case. *Id.* at 19-20. The Court will address each argument in turn.

A. Trademark Infringement and Unfair Competition

Defendant argues that Plaintiff's trademark infringement and unfair competition claims under both the Lanham Act and Virginia common law should be dismissed because Plaintiff lacks legal ownership of the asserted trademark. 15 U.S.C. §§ 1114, 1125(a)-(c); Va. Code Ann. § 59.1-92.12 (West). Plaintiff counters that it has alleged sufficient facts to make its ownership of the LBLA Marks plausible on the face of the Complaint. Dkt. 15 at 4.

The standards for asserting Lanham Act claims for trademark infringement and unfair competition based on the inappropriate use of a mark are largely the same. Likewise, trademark infringement and unfair competition claims under Virginia common law applies the same test. *U.S. Search, LLC v. U.S. Search.com Inc.*, 300 F.3d 517, 522-23 (4th Cir. 2002); *Lone Star Steakhouse & Saloon, Inc. v. Alpha of Virginia, Inc.*, 43 F.3d 922, n.10 (4th Cir. 1995). To allege either claim successfully, a plaintiff must establish: "(1) that it possesses the mark; (2) that the defendant used the mark; (3) that the defendant's use of the mark occurred 'in commerce'; (4) that the defendant used the mark in connection with 'the sale, distribution, or advertising' of goods or services; and (5) that the defendant used the mark in a manner likely to confuse consumers." 15 U.S.C. §§ 1114, 1125(a); *People for the Ethical Treatment of Animals v. Doughney,* 263 F.3d 359, 364 (4th Cir.2001). At the motion to dismiss stage, "a conclusory and 'formulaic recitation' of the elements of a trademark infringement cause of action is insufficient to survive a motion to dismiss." *Hensley Mfg. v. ProPride, Inc.,* 579 F.3d 603, 609 & n. 3 (6th Cir.2009). Thus, a

plaintiff must first sufficiently allege that it has a valid and protectable mark. *B & J Enterprises, Ltd. v. Giordano*, 329 F. App'x 411, 416 (4th Cir. 2009).

Plaintiff has sufficiently alleged that it has a valid and protectable mark. When the USPTO issues a certificate of registration, that registration provides *prima facie* evidence of: (1) the validity of the mark and its registration; (2) the registrant's mark; and (3) the registrant's exclusive right to use the mark on or in connection with the goods and services specified in the certificate of registration. *U.S. Search, LLC*, 300 F.3d at 524; *see Am. Online, Inc. v. AT & T Corp.*, 243 F.3d 812, 816 (4th Cir. 2001) (holding that the certificate of registration provided *prima facie* evidence of validity of the trademark at issue); *see also Rebel Debutante LLC v. Forsythe Cosm. Grp., Ltd.*, 799 F. Supp. 2d 558, 569 (M.D.N.C. 2011) (same). Here, Plaintiff's allegations and the public record together constitute a plausible claim for valid trademark ownership. First, the Court presumes that Plaintiff owns its LBLA Mark because it presented proof of registration with the USPTO. Dkt. 1 ¶¶ 10-12; U.S. Trademark Registration No. 5591441 (issued Dec. 19, 2017); U.S. Trademark Registration No. 5964570 (issued Nov. 05, 2019). Both Plaintiff's factual allegations and the public record show that Plaintiff is the current owner of U.S. Trademark Registration No. 5591441 and No. 5964570, issued by the USPTO. *Id.* ¶¶ 11-12. In *Am. Online, Inc.*, a plaintiff presented its USPTO certificate of the registration for the trademark "Buddy List." *Am. Online, Inc.*, 243 F.3d at 816. The court in *Am. Online, Inc.*, found that the certificate of registration provided *prima facie* evidence of the validity of the mark and the registrant's exclusive right to use the mark because the USPTO does not register a mark unless it meets the requirements established by statute. *Id.* Like in *Am. Online, Inc.*, where the USPTO would not have registered "Buddy List" unless it met the requirements established by statute, here, the USPTO Registrations No. 5591441 and No. 5964570 would not have been registered unless the LBLA Mark met the

8

requirements established by statute. *Id.* Similarly, in *Rebel Debutante*, the court found that the plaintiff was the valid owner of the mark "Rebel Debutante" because the USPTO registration provided a presumption that the mark met the requirements established by the USPTO. 799 F. Supp. 2d at 569. Likewise, here, the USPTO registrations provide a *prima facie* case of valid ownership of the LBLA Mark because there is a presumption that the LBLA Mark meets the statutory requirements. *Id.* Therefore, the Court finds that Plaintiff's certificate of USPTO registration sufficiently states a *prima facie* case for validity of the LBLA Mark.

Despite Plaintiff's proof of registration, Defendant argues that the assignment of the U.S. Trademark Registration No. 5591441 and No. 5964570 are invalid because the prior owner entity, LBLA Beauty, Inc, had dissolved and ceased to legally exist before proper transfer of ownership. Dkt. 9 at 8. While Defendant can collaterally attack the presumption of validity by way of an affirmative defense or counterclaim, *Pizzeria Uno Corp. v. Temple*, 747 F.2d 1522, 1529 (4th Cir. 1984) (citing 15 U.S.C. § 1115(a)), it is not appropriate to address such affirmative defenses at the motion to dismiss stage unless the face of the complaint clearly reveals the existence of a meritorious affirmative defense, *Richmond, Fredericksburg & Potomac R. Co. v. Forst*, 4 F.3d 244, 250 (4th Cir. 1993). Here, the face of the Complaint does not reveal the existence of the affirmative defense that Defendant raises — that the original assignment of the trademarks was invalid. Thus, the Court will not consider Defendant's affirmative defense at this stage of the proceedings but does not preclude Defendant from raising this defense at a later time.

Furthermore, Plaintiff sufficiently alleges the other requirements of a trademark infringement claim in its Complaint. 15 U.S.C. §§ 1114, 1125(a). Plaintiff asserts that Defendant uses the LLBA Professional Mark on its websites and that it offers its eyelash extension products and services to the general public while using the name LLBA in their U.S. advertising and

marketing. Dkt. 1 ¶¶ 17-23. Plaintiff also argues that Defendant's use of the LLBA Professional Mark causes confusion among both the parties' customers which is demonstrated by the multiple customer complaints that Plaintiff has received regarding Defendant's products. *Id.* ¶ 26. Therefore, construing the facts in the light most favorable to Plaintiff, Plaintiff has pleaded sufficient facts at this stage to state a claim for trademark infringement and federal and common law unfair competition. Accordingly, the Court will deny Defendant's Motion to Dismiss as it pertains to Counts I, II, IV, V, and VI.

### B. Federal Trademark Dilution

Defendant next argues that Plaintiff's Federal Trademark Dilution claim (Count III) should be dismissed because Plaintiff fails to allege sufficient facts to support that its mark is "famous" as required under the Federal Trademark Dilution Act ("FTDA"). Dkt. 9 at 2. Plaintiff counters that it has sufficiently pled enough facts to support a plausible inference of fame, based on its large advertising and marketing budget and its recognition in various media sources. Dkt. 15 at 11.

To state a dilution claim, a plaintiff must show (1) that the plaintiff owns a famous mark that is distinctive, (2) that the defendant has commenced using a mark in commerce that is allegedly diluting the famous mark, (3) that a similarity between the defendant's mark and the famous mark gives rise to an association between the marks, and (4) that the association is likely to impair the distinctiveness of the famous mark or to harm the reputations of the famous mark. *Louis Vuitton Malleter S.A. v. Haute Diggity Dog, LLC*, 507 F.3d 251, 264-65 (4th Cir. 2007). A necessary element of the claim is that a plaintiff's mark is "famous." *Id.* A mark is considered famous if "it is widely recognized by the general consuming public of the United States as a designation of source of the goods or services of the mark's owner." 15 U.S.C. § 1125(c)(2)(A) (2020). This is a high bar and "[a] mark must be truly prominent and renowned" to be considered

10

famous under this standard. *Rosetta Stone Ltd. v. Google, Inc.*, 676 F.3d 144, 171 (4th Cir. 2012). As this designation provides strong protection to a mark, "the [Lanham Act] extends dilution protection only to those whose mark is a 'household name.'" *Id.* (quoting *Nissan Motor Co. v. Nissan Computer Corp.*, 378 F.3d 1002, 1011 (9th Cir. 2004)). Thus, fame in a "niche" market is insufficient to support a claim under the Trademark Dilution Revision Act. *Field of Screams, LLC*, 2011 WL 890501, at *9 (citing *Top Tobacco, L.P. v. N. Atl. Operating Co., Inc.*, 509 F.3d 380, 384 (7th Cir. 2007)).

In determining whether a mark is famous, a court may consider all relevant factors, including the following: "(i) The duration, extent, and geographic reach of advertising and publicity of the mark, whether advertised or publicized by the owner or third parties; (ii) the amount, volume, and geographic extent of sales of goods or services offered under the mark; (iii) the extent of actual recognition of the mark; and (iv) whether the mark was registered under the Act of March 3, 1881, or the Act of February 20, 1905, or on the principal register." 15 U.S.C. § 1125(c)(2)(A)." If a plaintiff does not allege any of those relevant factors, a motion to dismiss is warranted. *See e.g.*, *Bros. of Wheel M.C. Exec. Council, Inc. v. Mollohan*, 909 F. Supp. 2d 506, 539 (S.D.W. Va. 2012) (dismissing a motorcycle club's trademark dilution claim because it provided no information, data, or statistics demonstrating that its mark was widely recognized by the general consuming public of the United States); *see also Intercollegiate Women's Lacrosse Coaches Ass'n v. Corrigan Sports Enterprises, Inc.*, 505 F. Supp. 3d 570, 588 (M.D.N.C. 2020) (dismissing a women's lacrosse association's federal trademark dilution claim because it stated no facts or data to indicate that its trademark was sufficiently famous). Additionally, if a plaintiff alleges wide-spread recognition only among a specific sub-class of consumers, a motion to dismiss is also warranted. *Field of Screams, LLC*, 2011 WL 890501, at *9 (dismissing trademark dilution

11

claim where mark associated with the "haunt industry" was not recognized beyond that niche market).

Here, Plaintiff has not pleaded sufficient facts to support the plausible inference that the LBLA Mark is a nationally famous mark. Plaintiff alleges that the LBLA Mark is heavily promoted on podcasts, news programs, and social media platforms. Dkt. 1 ¶¶ 38, 40-42. Specifically, Plaintiff alleges that the LBLA Mark was featured on the "LashFest Podcast" as well as at tradeshows such as "LASHCONference, Love Lash Congress Miami, International Beauty Show ("IBS") Las Vegas, BeautyCon LA, LashBash Conference." Dkt. 1 ¶ 41. While these facts suggest that Plaintiff's mark has received recognition in the beauty or lash extension industry, those facts do not indicate that, nationwide, the "general consuming public" would recognize the mark. *Field of Screams, LLC*, 2011 WL 890501, at *9; *see also Helios Int'l S.A.R.L. v. Cantamessa USA, Inc.*, No. 12-cv-8205, 2013 WL 3943267, at *10 (S.D.N.Y. July 31, 2013) (holding that it is insufficient to "allege that the marks have an extremely high degree of recognition among consumers of luxury jewelry," as "[t]his is the very definition of the type of 'niche' fame that is insufficient to support a finding of fame for [Trademark Dilution Revision Act] purposes"); *Aegis Software, Inc. v. 22nd Dist. Agricultural Ass'n*, 255 F.Supp.3d 1005, 1011 (S.D. Cal. 2017) (dismissing plaintiff's dilution claim for the marks "San Diego Spirits Festival" and "San Diego International Spirits Bottle Competition" because the marks had not achieved fame beyond a specialized market). Additionally, though Plaintiff alleges the LBLA Mark was promoted on Good Day LA and FOX News Los Angeles, many brands are promoted on these programs and not all of them are famous. *Glob. Brand Holdings, LLC v. Church & Dwight Co.*, No. 17-CV-6571 (KBF), 2017 WL 6515419, at *5 (S.D.N.Y. Dec. 19, 2017) (citing *TCPIP Holding Co., Inc. v. Haar Commc'ns, Inc.*, 244 F.3d 88, 99 (2d Cir. 2001)).

Plaintiff's remaining allegations also fall short. Plaintiff alleges that it spent approximately $2,069,000 on advertising since 2018, and that it achieved $45 million in sales revenue. Those facts do not establish that Plaintiff's mark is a household name and has obtained national recognition. *See Glob. Brand Holdings,* LLC, 2017 WL 6515419, at *5 ("[A]llegations that plaintiff here invested money [and] ... used its marks widely in internet advertisements [is not] sufficient to state a plausible claim that a mark is famous."). Finally, although the Complaint states that due to LBLA's extensive advertising its mark is "now a nationally recognized lash extension product company," Dkt. 1 ¶ 41, such allegations "are conclusory and not entitled to be assumed true." *Iqbal*, 556 U.S. at 681. At best, Plaintiff has only alleged facts to support fame in a niche market, and therefore Plaintiff has failed to state a claim for trademark dilution. Accordingly, Plaintiff's trademark dilution claim (Count III) will be dismissed without prejudice.

### C. Violation of the Virginia Consumer Protection Act

Defendant argues that Plaintiff's Virginia Consumer Protection Act ("VCPA") claim should be dismissed because "Plaintiff has failed to plead a particular transaction to which its alleged violation of the Act would apply." Dkt. 9 at 20. In its Opposition, Plaintiff withdrew its VCPA claim. Dkt. 15 at 12. Accordingly, Plaintiff's VCPA claim (Count VII) will be dismissed.

### IV. CONCLUSION

For the foregoing reasons, it is hereby ORDERED that Defendant's Motion to Dismiss (Dkt. 8) is DENIED as to Counts I, II, IV, V, and VI and GRANTED as to Counts III and VII; and it is

FURTHER ORDERED that Count III of the Complaint (Dkt. 1) is DISMISSED WITHOUT PREJUDICE; and it is

FURTHER ORDERED that Count VII of the Complaint (Dkt. 1) is DISMISSED WITH PREJUDICE; and it is

FURTHER ORDERED that if Plaintiff seeks to amend its claim for trademark dilution (Count III), it may file a Motion to Amend with a proposed amendment attached, within 21 days of this Order.

The Clerk is directed to forward copies of this Order to counsel of record.

It is SO ORDERED.

Alexandria, Virginia
February 12, 2024

/s/
Rossie D. Alston, Jr.
United States District Judge