IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | |
|---|---|
| LBLA BEAUTY, LLC, | ) |
| Plaintiff, | ) ) ) |
| v. | ) ) Civil Action No. 1:23-cv-665 (RDA/LRV) |
| 11177753 CANADA CORPORATION, *d/b/a* LLBA PROFESSIONAL | ) ) ) ) |
| Defendant. | ) ) |

## MEMORANDUM OPINION AND ORDER

This matter comes before the Court on Plaintiff LBLA Beauty, LLC's ("Plaintiff" or "LBLA Beauty") Motion to Dismiss ("Motion") (Dkt. 24) Defendant 11177753 Canada Corporation *doing business as* LLBA Professional's ("Defendant" or "LLBA Professional") Counterclaim (Dkt. 21). This Court has dispensed with oral argument as it would not aid in the decisional process. *See* Fed. R. Civ. P. 78(b); Local Civil Rule 7(J). This matter has been fully briefed and is now ripe for disposition. Considering the Motion together with Plaintiff's Memorandum in Support (Dkt. 25), Defendant's Opposition (Dkt. 27), and Plaintiff's Reply (Dkt. 28), the Court GRANTS Plaintiff's Motion for the reasons that follow.

# I. BACKGROUND

## A. Factual Background[1]

Plaintiff initiated the instant action on May 22, 2023, alleging that Defendant's use of the LLBA Professional mark infringes upon the marks shown in U.S. Trademark Registration No. 5591441 (the "'441 Registration") and U.S. Trademark Registration No. 5964570 (the "'570 Registration"). *Id.* ¶ 10. Thereafter, Defendant asserted the following five Counterclaims against Plaintiff: (1) cancellation of the '441 Registration pursuant to 15 U.S.C. § 1119; (2) cancellation of the '570 Registration pursuant to 15 U.S.C. § 1119; (3) federal unfair competition pursuant to 15 U.S.C. § 1125(a); (4) common law unfair competition; and (5) cybersquatting pursuant to 15 U.S.C. § 1125(d). Dkt. 21 at 27-31 ¶¶ 40-61.[2]

On August 10, 2017, Katarzyna Zasowska filed an application for the '441 Registration based on intent to use under Section 1(b) of the Lanham Act. *Id.* at 19 ¶ 11. On August 13, 2018, Zasowska filed a statement of use regarding the '441 application, claiming as follows:

> (1) Cosmetic preparations for eyelashes, false eyelashes, adhesives for affixing false eyelashes all in Class 3, with first use anywhere and in commerce claimed as March 1, 2018; (2) tweezers; hair-removing tweezers all in Class 8, with first use anywhere and in commerce claimed as March 1, 2018; and (3) eyelash extension services in Class 44, with first use anywhere and in commerce claimed as March 1, 2018.

*Id.* at 19 ¶ 12. The U.S. Patent and Trademark Office ("USPTO") sent notice of its acceptance of Zasowska's statement on September 20, 2018. *Id.* at 19 ¶ 13. The '441 Registration was then

---

[1] This Court accepts all facts alleged within the Counterclaim as true, as it must at the motion-to-dismiss stage. *Alley v. Quality Eco Techs., LLC*, 2021 WL 1196188, at *3 n.7 (E.D. Va. Mar. 29, 2021); *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

[2] Because docket entry 21 has two sets of numbered paragraphs (the first referring to the Answer and the second referring to the Counterclaim), the Court includes both paragraphs and page numbers for citations to the allegations in the Counterclaim.

issued on October 23, 2018. *Id.* at 19-20 ¶ 14. On September 1, 2019, Zasowska assigned her interest in the '441 Registration to LBLA Beauty Inc. *Id.* at 21 ¶ 16; Dkt. 21-2, Ex. B.

On August 10, 2017, LBLA Beauty, Inc. filed an application for the '570 Registration based on claimed use in commerce under Section 1(a) of the Lanham Act. Dkt. 21 at 21 ¶ 17. The '570 application claimed as follows:

> False eyelashes; adhesives for affixing false eyelashes; cosmetic preparations for eyelashes; eyelash cleaner foam; liquid make-up remover all in Class 3. The date of first use anywhere was given as "at least as early as 05/00/2016" and the date of first use in commerce was given as "at least as early as 03/00/2018." Also claimed are Tweezers in Class 8. The date of first use anywhere was given as "at least as early as 05/00/2016" and the date of first use in commerce was given as "at least as early as 03/00/2018."

*Id.* at 21 ¶ 18. The '570 Registration was issued on January 21, 2020. *Id.* at 21-22 ¶ 19.

On May 22, 2023, LBLA Beauty Inc. assigned both the '441 Registration and the '570 Registration to LBLA Beauty, LLC *nunc pro tunc* as of March 16, 2021. Dkt. 21 at 21 ¶ 16; Dkt. 21-3, Ex. C (stating that "[t]his trademark assignment agreement . . . is effective *nunc pro tunc* as of March 16, 2021"). The assignment agreement was signed by Roxanne Bachelier in her dual capacities as General Manager of LBLA Beauty Inc. and General Manager LBLA Beauty LLC. Dkt. 21 at 23 ¶ 21.

LBLA Beauty LLC was formed on March 16, 2021. *Id.* at 23 ¶ 22; Dkt. 21-4, Ex. D ("Articles of Organization"). California state records reflect that LBLA Beauty Inc. was dissolved on February 6, 2023. Dkt. 21 at 23 ¶ 23; Dkt. 21-5, Ex. E ("Secretary of State Certificate of Dissolution"). Defendant thus alleges that LBLA Beauty Inc. did not exist on May 22, 2023, the date that it purportedly signed the agreement that assigned the '441 and '570 Registrations to LBLA Beauty LLC. Dkt. 21 at 23 ¶ 22.

3

Defendant has used its "LLBA mark and LLBA Professional trade name in the United States since at least as early as January 1, 2020." *Id.* at 23 ¶ 24. Defendant has advertised and sold products extensively under its LLBA mark, which has resulted in "substantial goodwill, consumer recognition, and secondary meaning to LLBA Professional's benefit." *Id.* Moreover, Defendant claims that the LLBA mark is fanciful, making Defendant's mark and tradename inherently distinctive. *Id.* at 23 ¶ 25. Defendant also owns and operates the websites "llbaprofessional.com" and "llbaprofessional.us." *Id.* at 26 ¶ 35. Defendant further alleges that, upon information and belief, Plaintiff or its affiliate, LashboxLA Canada ("LBLA Canada"), has begun using the domains "llbapro.com" and "llbaprofession.com" to direct consumers to LLBA Canada's website at "lashboxlacanada.com," from which LLBA Canada sells eyelash products that compete with Defendant's products. *Id.* at 27 ¶ 36. Defendant further alleges that, upon information and belief, LBLA Canada is affiliated with Plaintiff and Plaintiff receives financial benefit from LBLA Canada's sale of products through its website and other sources. *Id.* at 27 ¶ 38. Thus, Defendant asserts that the llbapro.com and llbaprofession.com domain names are an unauthorized use of Defendant's LLBA mark and LLBA Professional trade name to sell the same product types to the same consumers. *Id.* at 27 ¶ 39. Defendant further contends that Plaintiff's actions constitute "false association and unfair competition, as well as cybersquatting and tortious interference." *Id.*

On October 5, 2021, counsel for Plaintiff sent a letter to Defendant alleging that Defendant "embarked upon its use of the LLBA mark knowingly and intentionally seeking to confuse consumers," Dkt. 1-5 at 3, because the LLBA mark was substantially similar to Plaintiff's LBLA registered mark and because of "the relative lack of sophistication" of consumers, Dkt. 21 at 26

4

¶ 29. Counsel for Defendant responded to the letter on October 13, 2021, and October 27, 2021, denying the allegations and setting forth defenses. *Id.* at 26 ¶ 30.

On May 17, 2022, Defendant filed application Serial No. 97414931 (the "'931 application") with the USPTO to register the LLBA mark for the following:

> (1) False eyelashes; Adhesive tape for affixing false eyelashes in the nature of adhesives for cosmetic use; Adhesive for false eyelashes; false eyelash adhesive remover; cosmetic pencils; cosmetic under eye pads; eyeliner; cosmetic foam tape for eyelash extension in the nature of adhesives for cosmetic use; cosmetic paper tape for eyelashes and eyebrows in the nature of adhesives for cosmetic use; cosmetic masks; non-medical cleansers for eyelash and eyebrow use, all in Class 3, with a first use in commerce listed as January 1, 2020; (2) Eyebrow tweezers; cases specially adapted for tweezers; false eyelash applicators, namely, tweezers for applying false eyelashes all in Class 8, with a first use in commerce listed as June 11, 2021; and (3) Cosmetic brushes; eyelash extension brushes; cosmetic applicator sticks for applying false eyelashes; make-up brushes, all in Class 21, with a first use in commerce listed as November 2, 2021.

*Id.* at 23-24 ¶ 26; Dkt. 21-7, Ex. G.

On September 23, 2022, Counsel for Plaintiff wrote another letter to Defendant alleging infringement on Plaintiff's marks. *Id.* at 26 ¶ 31. On October 6, 2022, Counsel for Defendant again denied the allegations and set forth additional defenses in response. *Id.* at 26 ¶ 32.

On May 16, 2023, the USPTO published the '931 application for opposition. Dkt. 21-7, Ex. G. at 4. On May 22, 2023, Plaintiff initiated this civil action by filing its Complaint. *Id.* at 26 ¶ 33.

The Trademark Trial and Appeal Board ("TTAB") received opposition papers as to the '931 application on June 13, 2023. Dkt. 21-7, Ex. G. at 4. On June 21, 2023, while the opposition was pending, the TTAB granted LBLA Beauty, LLC's consent motion to suspend the TTAB proceeding pending resolution of the instant action before this Court. Dkt. 21 at 25-26 ¶ 28.

5

B. Procedural Background

Plaintiff filed its Complaint in this District on May 22, 2023. Dkt. 1. On August 21, 2023, Defendant timely filed a Motion to Dismiss, seeking to dismiss all counts of Plaintiff's Complaint for failure to state a claim. Dkts. 8, 9. Plaintiff filed its Opposition to the Motion to Dismiss on September 5, 2023. Dkt. 15. On September 11, 2023, Defendant filed its Reply. Dkt. 16. On February 12, 2024, this Court granted-in-part and denied-in-part Defendant's Motion to Dismiss, dismissing Counts III and VII of the Complaint. Dkt. 20.

On February 26, 2024, Defendant filed its Answer, Affirmative Defenses, and Counterclaims against Plaintiff, asserting the five Counterclaims at issue here. Dkt. 21. On April 1, 2024, Plaintiff filed the instant Motion to Dismiss Defendant's Counterclaims for failure to state a claim. Dkts. 24; 25. Defendant filed its Opposition on April 15, 2024, Dkt. 27, and Plaintiff filed a Reply on April 22, 2024, Dkt. 28.

## II. STANDARD OF REVIEW

The same Rule 12(b)(6) standard applied in evaluating the sufficiency of a complaint is also applied in evaluating the sufficiency of a counterclaim. *See Serrano v. Serrano*, 2017 WL 2456988, at \*2 (E.D. Va. June 6, 2017) (applying the same Rule 12(b)(6) standard to motion to dismiss a counterclaim). A Rule 12(b)(6) motion tests the sufficiency of a complaint. *Brockington v. Boykins*, 637 F.3d 503, 506 (4th Cir. 2011). "[T]he reviewing court must determine whether the complaint alleges sufficient facts 'to raise a right to relief above the speculative level[,]'" and dismissal is appropriate only if the well-pleaded facts in the counterclaim "state a claim to relief that is plausible on its face." *Goldfarb v. Mayor & City Council of Baltimore*, 791 F.3d 500, 508 (4th Cir. 2015) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555,570 (2007). A claim is facially plausible "when the [complainant] pleads factual content that allows the court to draw the

reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556).

At the motion-to-dismiss stage, a complainant need only "allege facts sufficient to state all the elements of [its] claim," *Bass v. E.I. DuPont de Nemours & Co.*, 324 F.3d 761, 765 (4th Cir. 2003), and "the district court must 'accept as true all well-pled facts in the complaint and construe them in the light most favorable to [the complainant].'" *Dao v. Faustin*, 402 F. Supp. 3d 308, 315 (E.D. Va. 2019) (quoting *United States v. Triple Canopy, Inc.*, 775 F.3d 628, 632 n.1 (4th Cir. 2015)). Still, "[c]onclusory allegations regarding the legal effect of the facts alleged" need not be accepted. *Labram v. Havel*, 43 F.3d 918, 921 (4th Cir. 1995); *see also E. Shore Mkts., Inc. v. J.D. Assoc. Ltd. P'ship*, 213 F.3d 175, 180 (4th Cir. 2000) ("[W]hile we must take the facts in the light most favorable to the [complainant], we need not accept the legal conclusions drawn from the facts . . . . Similarly, we need not accept as true unwarranted inferences, unreasonable conclusions, or arguments."). And "[g]enerally, courts may not look beyond the four corners of the complaint in evaluating a Rule 12(b)(6) motion." *Linlor v. Polson*, 263 F. Supp. 3d 613, 618 (E.D. Va. 2017) (citing *Goldfarb*, 791 F.3d at 508).

## III. ANALYSIS

Defendant asserts five Counterclaims against Plaintiff as follows: (1) cancellation of the '441 Registration pursuant to 15 U.S.C. § 1119; (2) cancellation of the '570 Registration pursuant to 15 U.S.C. § 1119; (3) federal unfair competition pursuant to 15 U.S.C. § 1125(a); (4) common law unfair competition; and (5) cybersquatting pursuant to 15 U.S.C. § 1125(d). Dkt. 21 at 27-31 ¶¶ 40-61. Plaintiff seeks to dismiss each Counterclaim. Dkt. 25 at 1 (seeking dismissal "in its entirety"). For efficiency, the Court will first address Plaintiff's arguments regarding Counts I and II together, followed by Count V, and then Counts III and IV together.

A. Cancellation of the '441 and '570 Registrations – Counts I and II

As to Counts I and II of the Counterclaim, Defendant asserts two theories for cancellation of the '441 and '570 Registrations: (1) fraud on the USPTO and (2) trademark abandonment. Dkt. 21 at 27-28 ¶¶ 41-42, 45-46. In opposition, Plaintiff argues that Defendant fails to adequately plead either theory.

1. Fraud on the USPTO

"A third party may petition to cancel a registered trademark on the ground that the registration was obtained fraudulently." *In re Bose Corp.*, 580 F.3d 1240, 1243 (Fed. Cir. 2009). To allege a plausible fraud claim, the counterclaim must "state with particularity the circumstances constituting fraud." Fed. R. Civ. P. 9(b). "[T]he 'circumstances' required to be pled with particularity under Rule 9(b) are 'the time, place, and contents of the false representations, as well as the identity of the person making the misrepresentation and what he obtained thereby.'" *Harrison v. Westinghouse Savannah River Co.*, 176 F.3d 776, 784 (4th Cir. 1999). Thus, to state a fraud on the USPTO claim, Defendant must allege with particularity that "(1) an individual at [Plaintiff] made a material misrepresentation of fact to the USPTO in connection with the ['441 and '570] registration[s]; (2) the individual had actual knowledge or belief that the representation was false; (3) the individual had intent to deceive the USPTO in making the representation; (4) the USPTO actually relied on such representation; and (5) [Defendant] was injured as a result of that reliance." *Zhejiang Hailiang Co. v. KME Germany GmbH*, 2024 WL 3152380, *9 (E.D. Va. June 24, 2024) (citing *Exergen Corp. v. Wal-Mart Stores, Inc.*, 575 F.3d 1312, 1326-27 (Fed. Cir. 2009)).

In support of Counts I and II, Defendant merely asserts that Plaintiff has "misrepresented the ownership with regard to the '441 [and '570] registration[s] and has misrepresented the alleged

8

continuity of use." Dkt. 21 at 27-28 ¶¶ 41, 45.  Although Defendant incorporates by reference the paragraphs preceding that assertion, this conclusory statement fails to specify the alleged misrepresentations made by Plaintiff that form the basis of Counts I and II.  The Court is thus left to deduce which allegations in the Counterclaim support these claims.  Defendant alleges that Plaintiff made representations to the USPTO in its applications for the '441 and '570 Registrations, in statements submitted to supplement the applications, and in trademark assignment agreements.  Given that the Court must draw all reasonable inferences in Defendant's favor, the Court assumes that the alleged misrepresentation was made in relation to the May 22, 2023 trademark assignment agreement.  Even assuming this, however, the Counterclaim still fails to adequately state a fraud claim.

The first difficulty with Defendant's argument is that Defendant's claim is about a misrepresentation *to the USPTO* to obtain the '441 and '570 Registrations.  But the '441 and '570 Registrations issued in 2018 and 2020, which is prior to any reassignment that the Counterclaim alleges took place in 2021 or was formalized in 2023. Dkt. 21 at 19-21¶¶ 13, 16, 17.  Thus, it is unclear how the May 22, 2023 reassignment agreement could be the basis for fraud upon the USPTO that caused the '441 and '570 Registrations to issue years before the reassignment is alleged to have taken place.

Nonetheless, the Court further analyzes Defendant's claim of fraud.  The Counterclaim alleges that, on May 22, 2023, Roxanne Bachelier, acting in her capacities as General Manager of LBLA Beauty Inc. and General Manager of LBLA Beauty LLC signed an agreement on behalf of both entities, in which LBLA Beauty Inc. assigned the '441 and '570 Registrations to LBLA Beauty LLC *nunc pro tunc* as of March 16, 2021 – the date that LBLA Beauty LLC was formed.  Dkt. 21 at 21-23 ¶¶ 16, 21-22.  The Counterclaim further alleges that California state records show

9

that LBLA Beauty Inc. was dissolved on February 6, 2023, approximately three and a half months prior to the signing of the trademark assignment agreement. *Id.* at 23 ¶ 23. Beyond these allegations, however, the Counterclaim stops short of specifically identifying what representations made by Plaintiff to the USPTO are misrepresentations, leaving the Court to fill in the gaps and infer the basis of Defendant's fraud claims.

In its Opposition brief, Defendant attempts to clarify its fraud claims by referencing a "series of misrepresentation [sic] at the USPTO about the history, use, and ownership of the Trademarks, particularly concerning ownership of the marks and the status of Plaintiff's legal status." Dkt. 27 at 4. Defendant also points to alleged misrepresentations made by both Zasowska and Bachelier, despite the fact that Zasowska does not appear to have participated in the execution of the May 22, 2023 agreement. *Id.* (explaining that "[t]he representations are specifically identified as being made by Ms. Katerzyna Zasowska . . . and Ms. Roxanne Bachelier"). Nevertheless, "it is axiomatic that a complaint may not be amended by the briefs in opposition to a motion to dismiss." *Katz v. Oden, Feldman & Pittleman, P.C.*, 332 F. Supp. 2d 909, 917 n.9 (E.D. Va. 2004). Moreover, to the extent is a cursory reference to Plaintiff having "misrepresented the alleged continuity of use," Dkt. 21 at 27 ¶ 41, such allegations are entirely conclusory. Given the heightened pleading standard under Rule 9(b), which requires fraud claims to be stated with particularity, the Court cannot permit Counts I and II to proceed because the Counterclaim has not

10

identified with specificity the misrepresentation(s) underlying Defendant's fraud on the USPTO claims.[3]

## 2. Trademark Abandonment.

A trademark registration may be canceled on the grounds that the trademark has been abandoned. *See Beach Mart, Inc. v. L&L Wings, Inc.*, 784 F. App'x 118, 127 (4th Cir. 2019). A trademark is considered abandoned when "its use has been discontinued with intent not to resume such use." 15 U.S.C. § 1127. To state a claim for trademark abandonment, the challenger must demonstrate: "(1) non-use by the legal owner; and (2) no intent to resume use in the reasonably foreseeable future by the legal owner." *George & Co. LLC v. Imagination Ent. Ltd.*, 575 F.3d 383, 401 (4th Cir. 2009). "Three consecutive years of non-use creates a presumption that the legal owner intended not to resume use." *Id.*; *see also* 15 U.S.C. § 1127. In addition to demonstrating a period of non-use, a claim of "naked licensing" can also support an abandonment claim. *See Beach Mart, Inc.*, 784 F. App'x at 127. "Naked licensing occurs when the licensor fails to exercise adequate control over the licensee. . . . Such uncontrolled licensing may cause the trademark to

---

[3] The Court further notes that, to the extent that Counts I and II are based on an alleged misrepresentation regarding LBLA Beauty Inc.'s existence at the time the trademark assignment agreement was executed, Counts I and II would likely fail to meet the Rule 9(b) pleading standard with regard to intent to deceive. Rather than intentionally deceiving the USPTO, the facts as alleged suggest that Plaintiff may have simply overlooked assigning the trademark rights to its successor during the winding-down process of LBLA Beauty Inc.'s dissolution, and the trademark assignment agreement corrected that oversight. As the Federal Circuit has observed, "[t]here is no fraud if a false misrepresentation is occasioned by an honest misunderstanding or inadvertence without a willful intent to deceive." *In re Bose Corp.*, 580 F.3d at 1246. Here, Defendant has failed to allege any intent to deceive.

stop functioning as a symbol of quality and a controlled source." *Id.* (internal quotation marks and citation omitted).

As Plaintiff observes, Defendant's claims of trademark abandonment are based on a conclusory theory of naked licensing that, as alleged, cannot justify cancellation of the '441 and '570 Registrations. In support of Counts I and II, the Counterclaim merely alleges that "to the extent that LBLA Beauty is not policing or controlling the use of its marks and the quality of goods through the LBLA Canada business, which operates using U.S. domains, LBLA Beauty has abandoned its trademark rights." Dkt. 21 at 28 ¶ 46. The Counterclaim lacks any factual allegations that demonstrate how Plaintiff has failed to police or control the use of its marks or the quality of goods through the LBLA Canada business. Instead, it speculatively states, "to the extent" Plaintiff has not policed or controlled, which is insufficient to establish a claim for trademark abandonment. Dkt. 21 at 28 ¶ 42, 46. As such, because Defendant's allegations fail to provide the necessary factual support for a claim of trademark abandonment, Plaintiff's Motion to Dismiss will be granted with respect to Counts I and II for failure to state a claim for cancellation of the '441 and '570 Registrations.

## B. Cybersquatting – Count V

Count V of the Counterclaim alleges that Plaintiff has violated the Anti-Cybersquatting Consumer Protection Act ("ACPA") by causing the registration of the llbapro.com and llbaprofession.com domains, "which duplicate, incorporate, abbreviate, and are confusingly similar to [Defendant]'s distinctive LLBA and LLBA Professional trademarks and trade name."

Dkt. 21 at 30-31 ¶¶ 56-61.  Plaintiff contends, however, that Defendant has failed to allege Plaintiff's role sufficient to support liability under the ACPA.  Dkt. 25 at 14-15.

The purpose of the ACPA is to "curtail cyberpirates and cybersquatting."  *Prudential Ins. Co. of Am. v. Shenzhen Stone Network Info. Ltd.*, 58 F.4th 785, 796 (4th Cir. 2023).  A trademark owner can bring a civil action under the ACPA against a person who "registers, traffics in, or uses a domain name" that is "identical or confusingly similar to or dilutive of" a distinctive or famous mark with the "bad faith intent to profit."  15 U.S.C. § 1125(d).  Thus, to state a claim under the ACPA, Defendant must adequately allege that "(1) the party using the domain name 'had a bad faith intent to profit from using the . . . domain name'; and (2) the domain name 'is identical or confusingly similar to, or dilutive of [a] distinctive and famous . . . [m]ark.'"  *Id.* at 797.  A person is liable under this provision of the ACPA only if "that person is the domain name registrant or that registrant's authorized licensee."  15 U.S.C. § 1125(d)(1)(D).  Plaintiff asserts that Defendant has not plausibly alleged that Plaintiff either directly or indirectly registered the domains at issue.  Dkt. 25 at 14.  This Court agrees.

The Counterclaim alleges that, "on information and belief," Plaintiff, through its affiliate LBLA Canada, caused the registration of the llbapro.com and llbaprofession.com domains, "which duplicate, incorporate, abbreviate, and are confusingly similar to [Defendant]'s distinctive LLBA and LLBA Professional trademarks and trade name."  Dkt. 21 at 30 ¶ 58.  The Counterclaim further alleges that the llbapro.com and llbaprofession.com domains direct consumers to LBLA Canada's website.  *Id.* at 27 ¶ 36.  Moreover, "on information and belief," the Counterclaim asserts that "LBLA Canada is affiliated with [Plaintiff] and [Plaintiff] receives financial benefit from LBLA Canada's sale of products through its website."  *Id.* at 27 ¶ 37.  Additionally, "on information and belief," the llbapro.com and llbaprofession.com domains were allegedly registered on February

13

28, 2022, through "an entity that permits anonymous domain registration, on the registry operated and maintained by GoDaddy.com, LLC." *Id.* at 30-31 ¶¶ 59-60. Finally, Defendant asserts that the incorporation of Defendant's distinctive LLBA trademark in this manner "constitutes bad faith and an intent to profit from [Defendant]'s distinctive marks." *Id.* at 31 ¶ 61.

Defendant's ACPA claim fails because these allegations do not support a plausible inference that Plaintiff directly or indirectly registered, trafficked in, or used the llbapro.com and llbaprofession.com domain names. The assertion that Plaintiff "caused the registration" of the domain names is speculative, particularly given that Defendant alleges that the domains were registered anonymously. Nothing alleged in the Counterclaim plausibly demonstrates that Plaintiff or LBLA Canada is the anonymous registrant. The fact that the domains redirect consumers to LBLA Canada's website may permit a tenuous inference that LBLA Canada is the anonymous registrant, however, there is no allegation in the Counterclaim that LBLA Canada *licensed* Plaintiff to use the domains, only that, "on information and belief," LBLA Canada is "affiliated with" with Plaintiff. Dkt. 21 at 27 ¶ 37; 15 U.S.C. § 1125(d)(1)(D) (explaining that a person is liable only if "that person is the domain name registrant or that registrant's authorized licensee"); *see also Carter v. Va. Dep't of Game & Inland Fisheries*, 2018 WL 3614975, at *9 (E.D. Va. July 27, 2018) (holding that allegations based on information and belief "veer away from supporting plausible inferences, and turn instead toward unsupportable conclusory talismanic statements"). The allegations therefore fail to establish that Plaintiff, either directly or indirectly, registered, trafficked in, or used the llbapro.com and llbaprofession.com domain names. Without more concrete factual allegations to link Plaintiff to the domains, Defendant's ACPA claim cannot

14

proceed. As such, Defendant has failed to plausibly allege a violation of the ACPA, and the claim must be dismissed.

### C. Unfair Competition Claims – Counts III and IV

Counts III and IV of the Counterclaim are unfair competition claims asserted under the Lanham Act and the common law. "The test for . . . unfair competition under the Lanham Act is essentially the same as that for common law unfair competition under Virginia law because both address the likelihood of confusion as to the source of the goods or services involved." *Lone Star Steakhouse & Saloon, Inc. v. Alpha of Virginia, Inc.*, 43 F.3d 922, 930 n.10 (4th Cir. 1995); *Swatch AG v. Beehive Wholesale, LLC*, 739 F.3d 150, 162 (4th Cir. 2014) ("Virginia common law trademark infringement and unfair competition claims require the same proof, including a likelihood of confusion, as the Lanham Act offenses."). The Court will thus address the federal and common law claims together.

To state a claim for unfair competition under the Lanham Act, Defendant must adequately allege "(1) that it possesses a mark, (2) that the [plaintiff] used the mark, (3) that the [plaintiff]'s use of the mark occurred 'in commerce,' (4) that the [plaintiff] used the mark 'in connection with the sale, offering for sale, distribution, or advertising' of goods or services, and (5) that the [plaintiff] used the mark in a manner likely to confuse consumers." *U-Haul Int'l, Inc. v. WhenU.com, Inc.*, 279 F. Supp. 2d 723, 727 (E.D. Va. 2003) (quoting *People for the Ethical Treatment of Animals v. Doughney,* 263 F.3d 359, 364 (4th Cir.1995)); *see also* 15 U.S.C. § 1125(a).

In support of its unfair competition claims, Defendant again alleges that Plaintiff "cause[d] the registration and operation of the llbaprofession.com and llbapro.com domain names," which allegedly redirect consumers to LBLA Canada's website, "to garner sales from [Defendant]'s

15

customers and prospective customers." Dkt. 21 at 28-29 ¶ 49. Defendant further asserts that the domains are a "clear and willful unauthorized use of [Defendant]'s LLBA mark and the LLBA Professional trade name, for the purpose of garnering sales of product." *Id.* at 29 ¶ 50. Further, Defendant alleges that Plaintiff's "unlawful use . . . of the LLBA mark [in the domain names] is likely to deceive as to" the association of the mark with Plaintiff. *Id.* at 29 ¶ 53.

Defendant's unfair competition claims fail for the same reason its cybersecurity claim fails: the Counterclaim does not plausibly allege that Plaintiff directly or indirectly used Defendant's mark. As previously stated, the assertion that Plaintiff caused the registration and operation of the domain names is speculative, particularly given that Defendant alleges that the domains were registered anonymously. Further, even if the allegations permit a tenuous inference that LBLA Canada was the anonymous registrant, the Counterclaim does not plausibly allege that Plaintiff and LBLA Canada "have an apparent or actual partnership, have authority to bind one another in transactions with third parties or exercise joint ownership or control over the infringing product" so as to make Plaintiff vicariously liable for Defendant's unfair competition claim. *Rosetta Stone Ltd. v. Google, Inc.*, 676 F.3d 144, 165 (4th Cir. 2012) (explaining the standard for liability for vicarious trademark infringement). Defendant merely alleges that, "on information and belief, LBLA Canada is affiliated with [Plaintiff] and [Plaintiff] receives financial benefit from LBLA Canada's sale of products through its website." Dkt. 21 at 27 ¶ 37. Without more to concretely demonstrate that Plaintiff and LBLA have an apparent or actual partnership, Defendant cannot advance its unfair competition claims on a theory of vicarious liability. Defendant has therefore failed to state unfair competition claims under the Lanham Act or Virginia common law because Defendant has failed to plausibly allege that Plaintiff directly or indirectly used Defendant's mark

in commerce. Accordingly, Plaintiff's Motion to Dismiss will be granted with respect to Counts III and IV.

## IV. CONCLUSION

In sum, Defendant's Counterclaim has failed to state a claim. For the foregoing reasons, it is hereby ORDERED that Plaintiff's Motion to Dismiss (Dkt. 24) is GRANTED; and it is

FURTHER ORDERED that the Counterclaim (Dkt. 21) is DISMISSED WITHOUT PREJUDICE; and it is

FURTHER ORDERED that if Defendant seeks to amend its Counterclaim (Dkt. 21), it may file a Motion to Amend with a proposed amendment attached, within 21 days of this Order.

The Clerk is directed to forward copies of this Order to counsel of record.

It is SO ORDERED.

Alexandria, Virginia
March 25, 2025

/s/
Rossie D. Alston, Jr.
United States District Judge